# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

SAMUEL NUCKOLLS                                                    PETITIONER

v.                                                      No. 3:17CV46-MPM-RP

PELICIA HALL, ET AL.                                              RESPONDENTS

## MEMORANDUM OPINION

This matter comes before the court on the petition of Samuel Nuckolls, through counsel, for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and the petitioner has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

## Facts and Procedural Posture

The petitioner, Samuel Nuckolls, is in the custody the Mississippi Department of Corrections and is currently housed at the Mississippi State Penitentiary in Parchman, Mississippi. On February 14, 2012, a Desoto County grand jury indicted Nuckolls for thirteen (13) counts of video voyeurism in violation of Mississippi Code Annotated section 97-29-63, which provides:

Any person who with lewd, licentious or indecent intent secretly photographs, films, videotapes, records or otherwise reproduces the image of another person without the permission of such person when such person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom, bathroom, shower room, tanning booth, locker room, dressing room or bedroom shall be guilty of a felony[.]

Miss. Code Ann. § 97-29-63(1); *see also* State Court Record ("SCR"), Vol. 1, p. 11-14.

Nuckolls' original indictment charged that he "secretly filmed and videotaped" women in his bathroom on thirteen (13) different occasions. *Id*. The State later amended the indictment to

charge that each count, including the "otherwise reproducing" of the video images, took place at one of Nuckolls' two homes in Desoto County. *Id*. at p. 46.

On July 27, 2012, Mr. Nuckolls waived his right to a trial by jury, and the parties agreed to proceed with a bench trial based upon an agreed upon set of stipulated facts.[1] The parties asked the trial judge to decide the case based on the stipulation of facts and presented the following stipulation as to the facts common to all counts of Nuckolls' indictment to the court:

> The State would offer the testimony of Charlie Byrd, Bobby Ray Trump and/or Wyles Andrew of the Gosnell[, Arkansas] Police Department.[3] Their testimony would establish they received a criminal complaint on October 25, 2011. Gosnell police investigated the complaint. Defendant, Sammy Nuckolls, was given his Miranda wanting, waived rights, and proceeded to speak with investigators. Defendant admitted he recorded video images of two women in Mississippi using a video camera that appeared to be a pen. This information was passed on to Olive Branch Police for further investigation.

> An Apple MacBook laptop was in the Defendant's possession and was seized as evidence by Gosnell Police Department. The Defendant admitted to Gosnell authorities that the videos he took in Olive Branch were located on that computer. That MacBook was given to Olive Branch PD by Gosnell police. A search warrant was obtained and the videos identified in this indictment were found on that computer. A full forensic examination of the silver MacBook was conducted with the assistance of the FBI.

> On October 26, 2011[,] Detective Jeff Abbott of the Olive Branch Police Department followed up on the complaint. They made contact with [Nuckolls' wife,] Kimberly Nuckolls. She signed a consent to search form of the home she occupied with Sammy Nuckolls located at 7643 Meadow Ridge Lane, Olive Branch, Mississippi, located in DeSoto County. Photographs were taken of the bathroom on Meadow Ridge Lane[.] Several items of evidence were seized.

> Testimony and evidence would show that the Deed for the 7693 Meadow Ridge Lane, Olive Branch home was recorded with the clerk on October 6, 2009. This would show that Sammy Nuckolls and Kimberly Nuckolls did not own the house prior to

---

[1] The stipulation of facts presented at trial is attached as an appendix to the Mississippi Supreme Court's decision. (*Nuckolls v. State*, 179 So. 3d 1046 (Miss. 2015) (2014-KA-00311-SCT)). All parties agreed to and signed the stipulation. SCR, Vol. 3, p. 84.

that date. Prior to that date they resided at 9848 Pigeon Roost Circle, Olive Branch, MS. The events in all of the recordings contained in this indictment occurred at either of these 2 addresses.

Detective Abbott and a witness from Apple, Inc. would testify that a silver Apple MacBook Pro (Serial number W8047932ATMA1344) was purchased on January 5th, 2011 at the Apple Store in Germantown, TN (7615 West Karmington Boulevard Germantown, TN), The receipt/purchase number is R0206264496. Apple's records indicated that this MacBook Pro was purchased by the Defendant, Sammy Nuckolls, It can [b]e reasonably inferred that the videos in question on the Apple Computer were not there prior to January 5, 2011.

*Nuckolls*, 179 So. 3d at 1054.

The record further reflects that, upon receipt of the Apple Macbook laptop from the Gosnell Police Department on October 27, 2011, the Olive Branch Police Department obtained a search warrant to search the contents of the hard drive. SCR, Vol. 1, p. 100. The Olive Branch Police Department discovered video files of fourteen (14) different women, which revealed that they had been filmed in a bathroom, while they were removing their clothing and showering. *Id*. The beginning of each video file showed Nuckolls setting up and then positioning and repositioning the hidden camera to find the best angle to capture the video images of the victims. *Id*.

Detective Abbott's investigation revealed the identities of the victims shown in the video files. *Id*. at 100-101. Upon learning their names, Detective Abbott contacted the victims to allow them to positively identify themselves and to provide written statements regarding the videos. *Id*. at p. 101-102. Detective Abbott also learned that the videos of the women were captured either in the bathroom of the Nuckolls' residence, or in the bathroom of Nuckolls' previous residence, both located in Olive Branch. *Id*. at p. 102. As a result of these discoveries, the Olive Branch Police Department obtained another search warrant to conduct a more detailed search of

Nuckolls' home.  *Id*.  During the second search, officers seized two external hard drives, an

Apple iPad, and an Apple iPhone, identified as belonging to Nuckolls.  *Id*.

Nuckolls was subsequently arrested on October 29, 2011, and indicted on February 14,

2012, on the thirteen (13) counts of video voyeurism, pursuant to Miss. Code Ann. § 97-29-63.

SCR, Vol. 1, p. 11-15, 102.  Nuckolls' counsel moved to dismiss all counts of the indictment,

except Counts 3 and 4, for failure to prosecute the charges within the two-year statute of

limitations set forth in Mississippi Code Annotated section 99-1-5.  *Id*. at p. 26.  At a pre-trial

hearing on the motion to dismiss, Detective Abbott testified that all of the videos listed in the

indictment were found on Nuckolls' laptop computer, with the exception of the video listed in

Count 11 of the indictment, which was found on the video pen.  SCR, Vol. 3, p. 24-26, 28.  At

the conclusion of the hearing, the trial court ordered the parties to provide further proof regarding

the manufactured date of the laptop from which the videos were retrieved.  SCR, Vol. 1, p. 40.

On July 17, 2012, the State provided its supplemental proof that Nuckolls purchased the laptop

on January 5, 2011, and pointed out that the laptop was manufactured in 2010, as Detective

Abbott testified.  *Id*. at p. 42.  As such, the State argued that "[l]ogic dictates that the images

were transfer[ed] onto that computer after that date, well within any statute of limitations."  *Id*.

On July 18, 2012, the grand jury amended Nuckolls' indictment.  *Id*. at p. 46-49.  During

a hearing on Nuckolls' motion requesting a continuance, the State noted that the indictment was

amended to include the language contained in Miss. Code Ann. § 97-29-63, charging that

Nuckolls, "otherwise reproduce[d]" the images within the applicable statute of limitations by

saving the images to his computer.  *Id*. at p. 59-60.  The State also expanded the dates of the

criminal acts on various Counts, to reflect that all counts, except Counts 3 and 4, occurred

between June 1, 2007, through October 29, 2011. *Id.* The State argued that Nuckolls' act of transferring the videos to the laptop was an act of reproducing the video images, therefore, criminalizing Nuckolls' acts pursuant to the statute's language. *Id.* Moreover, because the videos were located on a laptop that Nuckolls did not purchase until January 2011, the transfer of the video images could not have occurred until after the purchase date, rendering the two-year statute of limitations inapplicable. *Id.* at p. 70-72.

As noted above, Nuckolls' counsel moved for a continuance, arguing that the State had made no allegation, nor offered any proof, as to where the images had been reproduced. *Id.* at p. 76. The trial judge found that all of the counts of Nuckolls' indictment survived the statute of limitations, but noted that he was providing Nuckolls with "some good grounds for appeal." *Id.* at p. 78. The trial court then denied Nuckolls' motion for continuance, and the trial date remained set for July 27, 2012. *Id.*

The stipulation of facts presented to the trial court further detailed the facts involved in each of the thirteen (13) counts of video voyeurism with which Nuckolls was charged, tracking the exact language of the amended indictment and summarizing the evidence that the State would offer at trial. *Nuckolls*, 179 So. 3d at 1054-59. Under the stipulation presented at trial, the parties agreed that the only issue to be "preserved for appeal" was the issue of the statute of limitations, except for Counts 3 and 4, which "[t]he parties agree[d] [we]re clearly within the statute of limitations." *Id.* at 1059. The parties further agreed that "all arguments and testimony regarding the statute of limitations [we]re preserved for appeal." *Id.*

Following the bench trial, and based on the stipulation of facts, the Desoto County Circuit Court found Nuckolls guilty on all thirteen (13) counts of video voyeurism. SCR, Vol. 1, p. 57-

59; Vol. 3, p. 100-103. At the separate sentencing hearing, the State presented victim impact statements. The defense presented multiple witnesses on behalf of Nuckolls, arguing for leniency in sentencing. The circuit court then sentenced Nuckolls to serve five years in the custody of the Mississippi Department of Corrections ("MDOC") for Count 3, and five years for Count 4, to run consecutively to the sentence in Count 3. SCR, Vol. 1, p. 59-61; Vol. 4, p. 235. The circuit court sentenced Nuckolls to serve five years for each of Counts 5 through 13, to run concurrently with the sentence imposed for Count 3. *Id*. Additionally, upon release from incarceration, the court sentenced Nuckolls to five years of reporting post-release supervision for Count 1, followed by five years of non-reporting post-release supervision for Count 2. *Id*. The court also fined Nuckolls in the amount of $5,000.00 for each Count and ordered Nuckolls to pay restitution in the amount of $19,500.00 to his victim in Count 7, to cover her counseling expenses. *Id*.

The circuit court then ordered, as part of Nuckolls' sentence, that the MDOC perform a mental evaluation of Nuckolls at the Mississippi State Hospital and report its findings to the court within 180 days. SCR, Vol. 1, p. 60; Vol. 4, p. 236. Nuckolls' counsel requested that the trial court reserve the right of review based on the evaluation. SCR, Vol. 4, p. 237. The court confirmed that it would reserve jurisdiction in the matter for 270 days to receive reports, advising the parties that the reports could potentially have an effect on the length of Nuckolls' sentence. *Id*.

Defense counsel subsequently filed a "Motion to Review Sentence," on which the trial court held a hearing on February 5, 2014. SCR, Vol. 5, p. 241. Nuckolls' counsel presented five witnesses in support of his motion, including Frederick Taylor and Dr. Criss Lott, who both

- 7 -

performed psychosexual assessments on Nuckolls and detailed their findings for the court. Each of these witnesses testified that Nuckolls had the intellectual capacity to understand what he had done, that he knew right from wrong, that he was a "bright guy" with no serious mental illness other than his voyeurism addictions, and that he was at low risk for sexual violence, but at moderate risk of repeated voyeurism. SCR, Vol. 5, p. 270, 276-277, 286, 291, 293, 297, 299. Based upon the information presented in support of Nuckolls' "Motion to Review Sentence," counsel urged the court to consider other options for Nuckolls, including awarding him credit for the 17-month period served to that point and sentencing him to house arrest, GPS monitoring, and treatment. *Id*. at p. 314-15. At the conclusion of the hearing, the court noted that Nuckolls was in the ultimate position of trust as a pastor, and he violated that trust by "us[ing his] ministry to promote [his] own selfish sexual perversion." *Id*. at. p. 330. The court further noted Dr. Lott's opinion finding that Nuckolls exhibited "prominent narcissistic personality traits." *Id*. at p. 330-331. The relevant portion of Dr. Lott's report regarding narcissism stated:

> Individuals with narcissistic personality traits tend to believe they are more important than other people. They tend to exaggerate their talents and believe they are special and act accordingly. They also take advantage of others. Current testing revealed that [Nuckolls] was attempting to minimize his psychological problems, and although he may now acknowledge his misdeeds, he may continue to deny having any serious psychological problems regarding his paraphilic interests.

*Id*. at p. 331.

Thus, it was Dr. Lott's "'opinion that [Nuckolls] remain[ed] a moderate risk for future voyeuristic behavior[,] and he is in need of treatment addressing his [paraphilic] behavior." *Id*. Accordingly, the court determined that it "[wa]s not willing to take any risk concerning a moderate risk for this continued type of behavior," and the court denied Nuckolls' motion to reduce his sentence. *Id*. at p. 331-332.

Nuckolls appealed his convictions and sentences to the Mississippi Supreme Court, raising three issues, through counsel:

1. Whether the trial court erred in finding that Mississippi Code Annotated § 97-29-63 criminalizes the transferring of a video onto a computer.

2. Whether the trial court erred in finding Nuckolls guilty and subsequently overruling [his] motion of judgment of acquittal notwithstanding the verdict or in the alternative for a new trial in counts 1, 2, 5, 6, 7, 8, 9, 10, 12, and 13.

3. Whether the trial court erred in overruling Nuckolls's motion to dismiss and overruling defendant's motion of judgment of acquittal notwithstanding the verdict or in the alternative for a new trial in count 11.

Nuckolls thus appealed his ten (10) "transfer" convictions on the grounds that the statute did not criminalize the transfer of images to a computer, noting that, even if it did, the State failed to prove where the transfers took place, or who made the transfer. *See* SCR, 2014-KA-00311-SCT, Briefs of the Parties, Appellant's Brief, p. 7. Nuckolls also challenged one of his three filming convictions, arguing that the State failed to prove that it occurred within the statute of limitations. Nuckolls did not appeal his filming convictions in Counts 3 and 4.

On December 10, 2015, the Mississippi Supreme Court affirmed in part and reversed in part the judgment of the lower court. *Nuckolls v. State*, 179 So. 3d 1046 (Miss. 2015) (No. 2014–KA–00311–SCT). The majority held that: (1) evidence was insufficient to support convictions on ten (10) of the thirteen (13) counts of video voyeurism[4]; (2) presentation of the case on stipulated facts for the trial court to adjudicate guilt was not equivalent to an admission of guilt; and (3) the evidence was sufficient to support Nuckolls' conviction on Count 11 of video voyeurism. *Id*.

The Mississippi Supreme Court found that, because the court reversed each of Nuckolls' transfer convictions based on the State's failure to prove venue in Counts 1, 2, 5, 6, 7, 8, 9, 10, 11, 12,

and 13, the court needed not address Nuckolls' contention on appeal that the statute did not criminalize

Nuckolls' conduct. *Nuckolls*, 179 So. 3d at 1051. The court noted that the State presented no

evidence at trial to show where the transfers took place. *Id*. The appellate court also held that one

could not assume that the transfers occurred in Desoto County simply because Nuckolls resided there,

since he allegedly used a laptop computer that was purchased in Tennessee, found in Arkansas, and

could be operated anywhere. *Id*. at 1049. The Mississippi Supreme Court further found that each

mention of Nuckolls' residence involved only the location where filming took place. *Id*. at 1050. As

such, the court held that the two events, filming and transferring to the laptop, could not have taken

place close in time because the filming took place outside the statute of limitations, so the transfer to

the computer must have taken place long after the filming. *Id*.

The Mississippi Supreme Court further found that Nuckolls did not appeal his

convictions on Counts 3 and 4, so those convictions were not before the court. *Id*. at 1052. As

such, the Mississippi Supreme Court upheld three of Nuckolls' thirteen (13) convictions. *Id*.

On July 29, 2016, Nuckolls filed an "Application to Supreme Court for Leave to Proceed

with Post[c]onviction Relief Action in Trial Court," raising the following issues through counsel:

I.     Mr. Nuckolls['] claims adequately set forth grounds of cause and prejudice for
       failing to raise these claims in previous proceedings.

II.    Mr. Nuckolls received ineffective assistance of counsel in violation of the
       Sixth and Fourteenth Amendments to the United States Constitution.

       A. Mr. Nuckolls received ineffective assistance, when counsel failed to
          obtain an evaluation of Mr. Nuckolls['] psychological status prior to or
          during trial, thus denying Mr. Nuckolls of a defense concerning his
          lessened culpability and consideration of factors in mitigation of his
          sentence.

       B. Mr. Nuckolls received ineffective assistance during sentencing in
          violation of the Sixth and Fourteenth Amendments to the United States

Constitution when counsel failed to object to the court's unfounded allegations regarding prior and related convictions in other states as factors considered by the court in forming the basis for the court's ultimate sentencing determination.

C. Mr. Nuckolls['] right to due process and a fair trial under the Fifth and Fourteenth Amendments was violated when the court incorrectly based its determination of Mr. Nuckolls['] overall sentence on allegations that Mr. Nuckolls had other related convictions, in multiple states, as well as other charges pending against him.

III. Mr. Nuckolls['] right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution was denied when counsel failed to request a change of venue due to the excessive media exposure within a small community, prior to and during, Mr. Nuckolls['] trial, and counsel was ineffective in failing to move the court to declare a mistrial based on the jury being tainted by such media exposure.

IV. Mr. Nuckolls received ineffective assistance of counsel when counsel failed to object and move for a mistrial when the court convicted and sentenced Mr. Nuckolls based on the judge's religious beliefs rather than the facts and law in violation of Mr. Nuckolls['] Fifth and Fourteenth Amendment right to due process of law.

V. Mr. Nuckolls is entitled to an evidentiary hearing on these matters.

*See* SCR, Cause No. 2016-M-01084.

The Mississippi Supreme Court found "that Nuckolls'[] allegations of ineffective assistance of counsel fail to meet the standard set out in *Strickland v. Washington* and that the petition should be denied." *See* Exhibit B (Order in Cause No. 2016-M-01084).

On February 27, 2017, Nuckolls filed the instant Petition for Writ of *Habeas Corpus*, raising the following issues through counsel:

**Ground One**: Mr. Nuckolls['] claims adequately set forth grounds of cause and prejudice for failing to raise these claims in previous proceedings.[6]

**Ground Two**: This ground is based on "ineffective assistance of counsel" ... in violation of the Sixth and Fourteenth Amendments of the United States Constitution.[7]

**A**. Mr. Nuckolls received ineffective assistance of counsel, when counsel failed to obtain an evaluation of Mr. Nuckolls['] psychological status prior to or during trial, thus denying Mr. Nuckolls of a defense concerning his lessened culpability and consideration of factors in mitigation of his sentence.

**B**. Mr. Nuckolls received ineffective assistance of counsel during sentencing in violation of the Sixth and Fourteenth Amendments of the United States Constitution when counsel failed to object to the court's unfounded allegations regarding prior and related convictions in other states as factors considered by the court in forming a basis for the court's ultimate sentencing determination.

**C**. Mr. Nuckolls['] right to effective assistance of counsel as guaranteed by the Sixth [and] Fourteenth Amendments to the United States Constitution was denied when counsel failed to request a change of venue due to the excessive media exposure within a small community, prior to and during, Mr. Nuckolls['] trial.

**D**. Counsel was ineffective in failing to move the court to declare a mistrial based on the taint of the excessive media exposure.

**E**. Mr. Nuckolls received ineffective assistance of counsel when counsel failed to object and move for a mistrial when the court convicted and sentenced Mr. Nuckolls based on the judge's religious beliefs rather than the fact and law in violation of Mr. Nuckolls['] Fifth and Fourteenth Amendment Right[s] to due process of law.

**F**. Trial counsel failed to move for an interlocutory appeal, which would have likely reached the same result as the direct appeal (thirteen counts reduced to only three counts after direct appeal).

**Ground Three**: Mr. Nuckolls['] right to due process and a fair trial under the Fifth and Fourteenth Amendments was violated when the court incorrectly based its sentencing on other crimes and abuse of religion.

ECF Docs. 1 and 2. Mr. Nuckolls has exhausted his state court remedies as to the issues raised in the instant petition, and return to the state court on these issues would be futile.

## Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has considered all grounds for relief in his petition on the merits and decided those issues against the petitioner; hence, these claims are barred from

*habeas* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be

*objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any ground of the instant petition.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Grounds One and Two: Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial

strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

### Failure of Counsel to Challenge Counts 3 and 4 on Direct Appeal

Mr. Nuckolls argues within the "supporting facts" section of Ground One that appellate counsel failed to raise any issues regarding Counts 3 and 4 of the Indictment on appeal. Mr. Nuckolls repeats this argument several times in his submissions to the court. Appellate counsel need not raise every "colorable" claim on appeal, as counsel has broad discretion in determining which issues are more likely to be successful. *Jones v. Barnes*, 463 U.S. 745, 751-754 (1985). Mr. Nuckolls has not shown that his appellate counsel was ineffective in choosing not to challenge Counts 3 and 4 on appeal, and instead, focusing the appeal on the issues related to the other eleven (11) counts of video voyeurism.

In the stipulation of facts presented at trial, the State and the defense agreed that Counts 3 and 4 clearly occurred within the statute of limitations, as the victims would testify as to the exact dates that Nuckolls secretly filmed them in 2011, and the location of the filming was not in dispute. *Nuckolls*, 179 So. 3d at 1059. In addition, the stipulation of facts as to Count 3 reflects that Nuckolls "admitted to making [the 2011] video [of the victim] to Gosnell[, Arkansas]

authorities." *Id*. at 1056. Because Nuckolls' appellate counsel had broad discretion in determining which issues to raise on appeal, he rendered effective assistance for choosing not to challenge those two counts of Nuckolls' thirteen-count indictment.

First, the State showed that it could adduce sufficient evidence to obtain a conviction on these counts. Further, Mr. Nuckolls has not stated what arguments counsel might have raised on appeal to challenge his conviction on these counts. Sometimes the prosecution has an overwhelming amount of evidence against a defendant, such that no legitimate defense exists. Indeed, that is why defendants often plead guilty, rather than proceed to trial. In this case, the prosecution had video of the events and testimony from the victims concerning the time and place of the offenses. Having reviewed the record, the court has not identified any valid grounds upon which Mr. Nuckolls might have based an appeal of Counts 3 and 4, and Mr. Nuckolls' *habeas corpus* counsel has offered none.

Mr. Nuckolls contends that "[t]he trial strategy to waive a jury trial and to offer a Stipulation of Facts proved to be ineffective and unreasonable." Doc. 14 at 1. The court disagrees, as – based upon the facts set forth in the stipulation – counsel succeeded in having all ten (10) of Nuckolls' transfer convictions reversed. The court also notes that, had Mr. Nuckolls taken his case to a jury trial, the jury would have seen all the video and heard the victims (and some victims' husbands) testify regarding the events leading up to the filming, including Mr. Nuckolls' many acts of deception and betrayal to obtain the naked images of the girls and women who trusted him. Examples of potentially devastating testimony regarding these issues include:

(1) Nuckolls told many of the victims that the shower drain in the guest bathroom was clogged, thus tricking them into using the master bath, where he had set up a camera to record them while they were naked (Doc. 11-4);

(2) Nuckolls counseled other pastors to record video of their naked wives so they could view their wives, rather than succumb to the temptation to view pornography; then he downloaded the images of his fellow pastors' wives onto his computer for his own viewing (Doc. 11-4 at 38-39);

(3) Nuckolls was close friends with some of his victims and their husbands, but betrayed them, anyway (*see, generally*, Doc. 11-4); and

(4) Nuckolls used his newly adopted child to lure victims to his house under the pretext of babysitting so that he could record them naked (Doc. 11-4 at 37-38).

Counsel's decision to forego the prosecution's presentation of this type of evidence and testimony to a jury certainly falls into the category of rational litigation strategy.

In his Memorandum in Support of the instant petition, Nuckolls argues that his "[appellate counsel] did not present any issue relative to Count[s] 3 and 4 on appeal to the great dissatisfaction of petitioner."  ECF Doc. 2, p. 2.  Mr. Nuckolls testified on the record, however, that he agreed to the stipulation, that he had reviewed its terms, that the stipulation was true and correct, and that he understood the agreement between the parties (including the stipulation regarding preservation of the statute of limitations issue on appeal).  SCR, Vol. 3, p. 86-89.  He also acknowledged that he was waiving his right to a jury trial and asking the judge to determine his guilt or innocence – *and was doing so to save the victims of his crimes more hardship*.  *Id*. at p. 87-89, 91-97.  Again, saving the victims from hardship is a laudable goal and also falls into

the category of a rational trial strategy.  As such, Mr. Nuckolls has not shown that appellate

counsel rendered ineffective assistance, and this claim is without merit.

### Failure of Counsel to Advise Nuckolls That Counsel Was Under Investigation by the Mississippi Bar

Mr. Nuckolls has offered no proof that the investigation regarding counsel negatively

impacted counsel's performance at trial and on appeal in this case.  Instead, he has offered only

his bare allegation.  *See Miller*, 200 F.3d at 281 ("[C]onclusory allegations of ineffective

assistance of counsel do not raise a constitutional issue in a federal *habeas* proceeding.")  To the

contrary, counsel mounted a spirited defense at each stage of litigation.  Counsel filed and argued

pretrial and post-trial motions, raised objections, subjected witnesses to vigorous cross-

examination (when appropriate), argued complex issues before the trial judge, and preserved

issues regarding the statute of limitations for appeal.  Indeed, the trial judge, on more than one

occasion, recognized the admirable performance of counsel, who represented Nuckolls both

during trial and on appeal. As the trial judge noted on the record:

> I am very familiar with your case.  Your lawyer has done an excellent job bringing
> things forward for my attention that the Court needs to consider.  You'd be wise to
> follow his counsel.  I've known your lawyer for a long time.  I know him to be a good
> man as well as an able lawyer.

SCR, Vol. 4, p. 229.  The trial judge praised the job defense counsel did on other occasions, as

well.  *See* SCR, Vol. 4 at 229-230, 326.

As discussed above, the evidence against Mr. Nuckolls was overwhelming and included

the video he took of his victims and the victims' testimony regarding his betrayal of trust – both

as a pastor and a friend.  Counsel thus focused on the lack of evidence regarding the times and

places the videos were taken.  The trial judge noted on the record that Nuckolls' counsel

effectively focused the court's attention on issues in the case and brought forward "impressive" witnesses and testimony to support Nuckolls' case and argument for leniency, despite the extensive evidence of Nuckolls' guilt, including video footage of Nuckolls setting up, positioning, and re-positioning the hidden camera to optimize the view of his naked victims. SCR, Vol. 4, p. 229.

This court has reviewed the entire trial transcript, as well as the pretrial and post-trial motions, and agrees with the trial judge's assessment of defense counsel's performance. Mr. Nuckolls has offered no proof at all that the Mississippi Bar's investigation of defense counsel negatively affected counsel's performance. Hence, the Mississippi Supreme Court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. Mr. Nuckolls is not entitled to federal *habeas corpus* relief on his claims raised in Ground One.

**Ground Two(A):  Evaluation of Mr. Nuckolls' Psychological Status**

In Ground Two (A), Nuckolls alleges that his counsel was ineffective in failing to obtain an evaluation of Nuckolls' psychological status before or during trial. ECF Doc. 2, p. 4. Nuckolls claims that, as a result, he was denied a defense based on his "lessened culpability" and further denied consideration of mitigating factors at sentencing. *Id*. These allegations are unsupported in the record. Trial counsel's actions fall within the realm of trial strategy and do not support a finding that counsel's performance was deficient in any manner. *See United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."" (quoting *Lamb v. Johnson*, 179

F.3d 352, 358 (5th Cir. 1999))); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."); *see also Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (internal citations omitted). A defendant who alleges a failure to investigate on the part of his counsel must allege specifically what the investigation would have revealed and how it would have altered the outcome of the trial. *See Gray v. Lucas,* 677 F.2d 1086 (5th Cir. 1982); *United States v. Lewis,* 786 F.2d 1278 (5th Cir. 1986); *Alexander v. McCotter,* 775 F.2d 595 (5th Cir. 1985). Mr. Nuckolls has not met this standard.

In any event, Mr. Nuckolls, indeed, underwent *two* psychosexual assessments with Taylor and Dr. Lott, the findings of which were presented to the trial court and used to argue for a reduction in sentence. Each of these witnesses testified that Nuckolls had the intellectual capacity to understand what he had done, that he knew right from wrong, that he was a "bright guy" with no serious mental illness other than his voyeurism addictions, and that he presented low risk for sexual violence, but moderate risk of repeated voyeurism. SCR, Vol. 5, p. 270, 276-277, 286, 291, 293, 297, 299. As Mr. Nuckolls actually underwent psychological testing, and the trial court used those tests to determine the proper sentence, the Mississippi Supreme Court was correct in finding that Nuckolls failed to demonstrate that his counsel was constitutionally ineffective. The Mississippi Supreme Court's decision was neither contrary to, nor did it involve

an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Further, the decision was not based on an unreasonable determination of the facts in light of the evidence.   Mr. Nuckolls is not entitled to federal *habeas corpus* relief on his claim in Ground Two (A).

**Ground Two (B):  Counsel's Failure to Object at Sentencing**

In Ground Two (B), Nuckolls alleges that his counsel was ineffective in failing to object to the trial "court's unfounded allegations regarding prior and related convictions in other states as factors considered by the court in forming a basis for the court's ultimate sentencing determination."  ECF Doc. 1, p. 4.  As discussed in Ground Three below, the trial court ordered a presentence investigation report to be completed by the MDOC probation office and submitted to the court for use in sentencing.  SCR, Vol. 3, p. 96, Vol. 4, p. 228.  That report mentioned videos appearing to have occurred in other states, as well as investigations into similar charges arising in other states – and the fact that Mr. Nuckolls had a "record."  Mr. Nuckolls claims that counsel was ineffective in failing to object to a statement about other investigations or convictions made in passing by the trial court during sentencing.  However, the court's statement was part of a larger explanation pointing out that Mr. Nuckolls has a lengthy history of recording naked women without their knowledge or consent.  Indeed, law enforcement officers recovered at least seven videos not included in those used in the prosecution at issue here, some of which were taken in other locations.  Thus, the evidence established such a pattern, even in the absence of prior convictions.  For these reasons, counsel's decision does not rise to the level of ineffective assistance; as such, the claim must fail.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite.").

Thus, the Mississippi Supreme Court was correct in finding that Nuckolls failed to demonstrate that his counsel was constitutionally ineffective. The Mississippi Supreme Court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Mr. Nuckolls is not entitled to federal *habeas corpus* relief on his claims raised in Ground Two (B).

**Grounds Two (C)-(F): Challenges to Counsel's Failure to File Motions**

In Grounds Two (C)-(F), Nuckolls alleges that his counsel was ineffective in failing to file various motions at trial and at his sentencing hearing. Mr. Nuckolls submitted these claims on post-conviction review, and the Mississippi Supreme Court found that the claims "of ineffective assistance of counsel failed to meet the standard set forth in *Strickland*" and denied his petition. *See* Exhibit B. Accordingly, as will be discussed in detail below, the motions Mr. Nuckolls' believes counsel should have filed are meritless, and the court cannot deem counsel to have been ineffective for failing to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990).

In Grounds Two (C) and (D), Mr. Nuckolls alleges that trial counsel was ineffective in failing to file a motion for change of venue due to excessive media exposure – and in failing to move for a mistrial based on the media exposure. The record does not support this claim. At a pre-trial motion hearing on May 19, 2012, counsel argued for a continuance of trial based upon concerns over "some pretrial publicity" that occurred in the "ten days" prior to the hearing. SCR, Vol. 3, p. 4. The State argued that any publicity concerns were matters that could be resolved during the *voir dire* process. *Id*. at p. 5. The trial court ultimately continued Nuckolls'

trial until July 30, 2012, "[d]ue to the seriousness of the charge," and to provide trial counsel

with "the opportunity to properly prepare his case" because "every defendant is entitled to

competent counsel[,] to prepared counsel." *Id*. at p. 7-8. Nuckolls then waived his right to a jury

trial, and acknowledged that he was requesting the trial judge to determine his guilt or innocence

based upon the stipulation of facts provided to the court. Based on the stipulation, the trial judge

conducted a bench trial and convicted Nuckolls of all thirteen (13) counts. Indeed, by the time of

Mr. Nuckolls' sentencing hearing, the trial judge (the factfinder in this case) had not witnessed

any of the publicity surrounding the case. Mr. Nuckolls' trial counsel argued at sentencing:

> [T]here's a lot of punishment here. There's the punishment of prison that Sammy's
> facing, but there's also been a great punishment of publicity surrounding this. There's
> been over 40 thousand things written on the internet about Sammy since this
> happened. People have told stories about Sammy that aren't true.
>
> The Court: I haven't seen a one of them.
>
> Mr. Michael: I know. I know you haven't, and I'm glad you haven't. I'm just sharing
> with you what's out there.

SCR, Vol. 4, p. 219. Thus, counsel argued that the bad publicity and public embarrassment

Nuckolls suffered should mitigate against a harsh criminal penalty.

In Ground Two (E), Mr. Nuckolls alleges that trial counsel was ineffective in failing to

object to and move for a mistrial when the trial court convicted and sentenced Nuckolls based on

the judge's religious beliefs, rather than the facts and the law. As discussed in detail in Ground

Three, the record does not support Nuckolls' allegations that the trial court imposed a ten-year

sentence based upon his religious beliefs. As such, trial counsel cannot be deemed ineffective

for failing to make meritless objections and failing to file meritless motions. *See Clark*, 19 F.3d

at 966; *Gibson*, 55 F.3d at 179; *Koch,* 907 F.2d at 527. Counsel could have sought a mistrial at

the conclusion of sentencing; however, Mr. Nuckolls has offered no proof that, had counsel made such a motion, the trial court would likely have ruled in his favor. Thus, this issue is without merit. Hence, Mr. Nuckolls has not shown that counsel was deficient in his decision to forego the motion – or that he suffered any prejudice as a result of counsel's decision not to seek a mistrial. The Mississippi Supreme Court's decision on this matter was reasonable in both fact and law, and this claim for *habeas corpus* relief is without substantive merit.

In Ground Two (F), Mr. Nuckolls alleges that trial counsel was ineffective in failing to move for an interlocutory appeal based upon his argument that such an appeal "would have likely rendered the same result as the direct appeal (13 counts reduced to only 3 counts after direct appeal)." ECF Doc. 1, p. 4. The following exchange, however, shows that Mr. Nuckolls agreed with counsel's decision not to move for an interlocutory appeal, choosing a bench trial, instead:

> Mr. Michael: Your Honor, if I could add this, too. Part of Mr. Nuckolls' decision do what he's doing is to avoid having to cause any more hardship to these ladies by coming here and having to testify and do more than – throughout a trial on this matter.
>
> But besides that, I would say this, that I agree with counsel here. We're doing this to preserve some legal issues that we believe exist in this case and are trying to do so in a manner that protects the State and Mr. Nuckolls and what we're doing. Is that a fair statement?
>
> [The State]: I believe that to be a fair statement. As I stated, in particular the potential for an interlocutory appeal delaying further proceedings.

SCR, Vol. 3, p. 91.

Defense counsel further noted that one of the purposes of the stipulation agreement to resolve the issues in Nuckolls' case was to avoid further pain and heartache for the victims, who had already suffered as a result of the video voyeurism. SCR, Vol. 4, p. 218. As demonstrated

by the record in this case, trial counsel cannot be deemed ineffective for failing to file meritless motions, as Nuckolls agreed with this strategy at trial. *See Gibson*, 55 F.3d at 179; *Koch,* 907 F.2d at 527. Moreover, Nuckolls cannot prove, based on his allegations in the instant petition, that "the result of the proceedings was fundamentally unfair or unreliable." *Vuong*, 67 F.3d at 685. Mr. Nuckolls suffered no prejudice from the decision, as the appellate court reached the same result that he alleges would have resulted from an interlocutory appeal. As such, the Mississippi Supreme Court was correct in finding that Nuckolls failed to demonstrate that defense counsel was constitutionally ineffective. The Mississippi Supreme Court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the decision was not based on an unreasonable determination of the facts in light of the evidence. Hence, Mr. Nuckolls is not entitled to federal *habeas corpus* relief on his claims raised in Grounds Two (C)-(F).

As discussed above, Mr. Nuckolls has failed to show that counsel's performance was deficient. Thus, Mr. Nuckolls' claims of ineffective assistance of counsel will be denied. Nuckolls has not alleged how any specific errors of counsel or the trial court undermined his trial and convictions for video voyeurism. In addition, he has not proved *Strickland's* prejudice prong, as he has not shown that the result of the proceedings would have been different or that counsel's performances rendered the result of the proceedings fundamentally unfair or unreliable.

Mr. Nuckolls has not shown that, "but for" counsel's alleged errors, the result of the trial would have been different, especially given the overwhelming evidence presented against him at

trial. As such, the Mississippi Supreme Court did not unreasonably construe the facts of the case in light of the evidence presented. Thus, the grounds for relief in Grounds One and Two regarding ineffective assistance of counsel are barred from federal *habeas corpus* review under § 2254(d).

### Ground Three: Due Process and Fair Trial During Sentencing Proceedings

In Ground Three, Mr. Nuckolls argues that his rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated when the trial court based its sentencing on other crimes and "abuse of religion." ECF Doc. 1, p. 5. In his Application for Post-Conviction Relief, Mr. Nuckolls presented these issues to the Mississippi Supreme Court in a subsection within his ineffective assistance of counsel claim. *See* SCR, Cause No. 2016-M-01084. The Mississippi Supreme Court denied relief on all of Nuckolls' claims raised on post-conviction review, finding that the "petition should be denied." *See* Exhibit B.

In this case, the trial court announced that, should Mr. Nuckolls be found guilty, the court would permit argument at sentencing, during which the parties could put on witnesses. SCR, Vol. 3, p. 93-94. The State asked for a total sentence of fifteen (15) years in the MDOC, followed by fifteen (15) years of post-release supervision, along with fines and costs. SCR, Vol. 4, p. 215. The trial court ordered a pre-sentence report from the MDOC probation office, which reflected that Nuckolls other criminal investigations into Mr. Nuckolls' behavior were ongoing. SCR, Vol. 3, p. 96, Vol. 4, p. 228.

At sentencing, the judge told Nuckolls:

The Court: Mr. Nuckolls, you've been found guilty on 13 counts of video voyeurism. It's really a distasteful thing for me to have to sentence a man such as yourself who has distinguished himself by service to our Lord and Savior. However, when I put this robe on, ain't nobody told me it was going to be easy.

- 26 -

[Nuckolls]:  Yes, sir.

The Court:  The thing that troubles me, I guess the most in your case is the length of time that expired between your first part of your acts and where we are today.  It's years.  One or two offenses over a short period of time would be treated differently.  However, you have multiple counts.  And secondly, the thing that really troubles me is that you have two prior convictions in Arkansas, and you have charges pending in Texas and Virginia, as far as I know, under your investigation.  That's what your presentence report says.  I'm going strictly by your presentence report from our Department of Corrections probation service.  You met your victims through church.  There's no doubt you've done some good things in your life.  There no doubt that you have saved souls.  There's no doubt that you have gotten people on the right road.  Sometimes the people that fall the hardest are the ones that fall the furthest.

[Nuckolls]:  Yes, sir.

The Court: And certainly I've heard instances today of ministers who have fallen from grace.

SCR, Vol. 4, p. 227-228.  The court was motivated to impose a ten-year sentence because Mr. Nuckolls had carried on his illicit scheme to capture video of unsuspecting naked women over a period of years.  He was not merely tempted once when an opportunity presented itself; instead, he carefully planned his crimes, drew his victims in through subterfuge, and violated their trust and privacy.  He did so repeatedly, as revealed by the 21 videos recovered during the investigation.

Nonetheless, the record shows that the trial court took into consideration all of the factors at issue in Nuckolls' case, including mention of his pre-sentence report submitted by the MDOC probation service.  *Id*. at p. 228.  The trial court's reference to information on Nuckolls' pre-sentence report during sentencing was proper.  The reference did not deprive Mr. Nuckolls of a fundamentally fair trial, nor his right to due process.  *See, e.g., Castillo v. Johnson*, 141 F.3d 218, 224 (5th Cir. 1998) (citing *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986) (A federal court's *habeas corpus* review is limited to determining whether the challenged action of the trial

- 27 -

judge is so extreme that it constituted a denial of fundamental fairness under the Due Process clause.))

Mr. Nuckolls has not alleged any facts sufficient to show a violation of his rights to due process and a fair trial. In addition, Mr. Nuckolls' Arkansas arrest for surreptitiously taking video of unsuspecting women led to the investigation for the Mississippi video voyeurism charges of the present case. SCR, Vol. 4, p. 108. Further, Detective Abbott testified regarding the function of Nuckolls' video camera pen, on which Abbott discovered stored media containing a video file that he believed depicted two other victims in Virginia. *Id.* at p. 112. Certainly, the trial court was aware of other investigations into Mr. Nuckolls' criminal behavior – which support the finding of Nuckolls' pattern of video voyeurism. The *thirteen (13)* counts of video voyeurism before the court also highlight Mr. Nuckolls' predilection for this type of behavior.

However, the record reveals that the trial court considered all of these factors, applied the law to the facts, and imposed a sentence within the maximum permitted under the law. Mr. Nuckolls' conduct was not an isolated incident. The trial judge also took into consideration the testimony of the witnesses who testified on Nuckolls' behalf at sentencing to ultimately sentence Nuckolls to consecutive five-year terms of imprisonment on Counts 3 and 4, with the other sentences to run concurrently with Count 3, which is substantially less than the maximum of five years for each of the thirteen (13) counts of video voyeurism in this case.

Indeed, at Nuckolls' hearing on his motion to reduce his sentence, the court stated, "The reason [the court] agreed to reserve jurisdiction in this case was because [the court] has a strong

desire to get it right." SCR, Vol. 5, p. 328. The court waited to see if the psychosexual reports would reveal any mitigating circumstances. The trial court further explained:

> I've heard with great interest and attention the testimony from Mr. Taylor and Dr. Lott, and both of these experts agree that you are in great need of intensive management. The ten years that I sentenced you to was intentional. I wanted you to serve ten years. I wanted that to be ten years not only of punishment for you but ten years of healing for these various victims.

*Id*. at p. 328. The trial court reiterated its reasons for sentencing Nuckolls as it did in the instant case. Mr. Nuckolls has not shown that his sentence was fundamentally unfair, as the court's reasoning was grounded in the facts presented at trial, during sentencing, and at Nuckolls' hearing on his motion for review of his sentence.

### "Abuse of Religion"

Mr. Nuckolls also claims that the trial court based his sentence on an "abuse of religion." He argues that the court's repeated references to the Bible showed that his sentence was based, not on the law and facts of the case, but instead on the court's religious beliefs. Mr. Nuckolls' counsel also argued in terms of "spiritual warfare" and used religious themes and issues throughout his arguments, as the record is filled with testimony regarding Nuckolls' roles as a pastor and youth minister. *See* SCR, Vol. 4, p. 216. Mr. Nuckolls repeatedly used his position as a spiritual authority to gain the trust of his victims to commit his crimes. He called other pastors to testify on his behalf; the State called his victims and some of their husbands to the stand to testify regarding their participation in religious events with Nuckolls. Some witnesses used Biblical themes of forgiveness to argue for leniency and mercy; others spoke using Biblical references to justice to argue for a lengthy sentence. Nearly every witness in the case testified through the lens of their religious beliefs. In addition, Nuckolls' counsel used Biblical themes

repeatedly while examining witnesses and during his argument – often in response to the various witnesses' references.

Mr. Nuckolls called other pastors and ministers to the stand to offer testimony in support of his arguments for leniency. Mr. Nuckolls' criminal case centered on the fact that he was an active minister – and that he used his position of trust and responsibility to facilitate the crimes of video voyeurism against women he befriended and betrayed in that capacity (including the wives of his closest friends). Thus, Mr. Nuckolls made his religious beliefs a centerpiece of his arguments during sentencing. It is not surprising, then, that the trial court would make at least *some* references to the Bible.

As Mr. Nuckolls notes, however, the trial court made many such references. References to religious themes are not, of themselves, improper. Indeed, a person's religious beliefs can become a part of him and often inform his decisions, large and small. The Establishment Clause commands "that the Government maintain strict neutrality, neither aiding nor opposing religion." *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 225, 83 S. Ct. 1560, 1576, 10 L. Ed. 2d 844 (1963). Thus, a judge's beliefs become a problem only if they do not align with the governing law and cause a judge to make a ruling outside the bounds of judicial discretion.

That did not happen in the present case, as discussed at length above. The driving forces behind the ten-year sentence were: (1) the highly repetitive nature of the offenses over a long period of time; (2) the gross betrayal of the confidence Nuckolls gained through his position as an authority figure; and (3) the premeditated nature of the offenses. These factors are independent from the references to the Bible. There would have been a violation of Nuckolls' position as an authority figure whether he had been a trusted teacher, coach, or family member.

In this case, however, he was a trusted *religious* figure (a youth pastor), which led to a number of religious references from nearly everyone participating in the case.

The Mississippi Supreme Court was correct in denying relief on these claims. Mr. Nuckolls has not shown how errors of the trial court undermined his convictions for video voyeurism. The Mississippi Supreme Court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, the decision was not based on an unreasonable determination of the facts in light of the evidence. Thus, Mr. Nuckolls is not entitled to federal *habeas corpus* relief on his claims raised in Ground Three.

## An Evidentiary Hearing Is Not Necessary

Mr. Nuckolls is not entitled to an evidentiary hearing in this case. This issue is governed by 28 U.S.C. § 2254(e)(2), which reads:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on this claim unless the applicant shows that --
>
> > (A) the claim relies on --
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added). "[R]eview under [28 U.S.C] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,*

131 S.Ct. 1388, 1398 (2011); *see also McCamey v. Epps*, 658 F.3d 491, 496–97 (5th Cir. 2011).[2]  The

Court also held that "[p]rovisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in

*habeas* are not an alternative forum for trying facts and issues which a prisoner made insufficient

effort to pursue in state proceedings.'"  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1401 (2011), citing

*Williams v. Taylor*, 529 U.S. 420, 437, 120 S.Ct. 1479 (2000).  Further, "when the state-court record

'precludes *habeas* relief' under the limitations of § 2254(d), a district court is 'not required to hold an

evidentiary hearing.'"  *Cullen*, 131 S.Ct. at 1399, citing *Schriro v. Landrigan*, 550 U.S. 465 (2007).

     A federal court may not grant an evidentiary hearing on claims that a *habeas* petitioner could

have developed in state court proceedings unless several criteria are satisfied.  Either the claim must

rely on a new rule of constitutional law, expressly made retroactive to cases on collateral review, or the

factual predicate could not have been previously discovered with due diligence.  28 U.S.C. §

2254(e)(2)(A).  The applicant must show that the proffered facts underlying the claim "would be

sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable

factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. §

2254(e)(2)(B).  This section discourages federal evidentiary hearings, *Fuller v. Johnson,* 114 F.3d 491,

496 (5th Cir. 1997), and shifts the focus of hearings to state court, where the facts should be developed.

*Hernandez v. Johnson,* 108 F.3d 554, 558 (5th Cir. 1997).  Mr. Nuckolls has not shown that an

evidentiary hearing is warranted in this case.

     In any event, a federal hearing need not consist of live testimony.  Indeed, the Fifth Circuit has

"repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the

---

    [2] Even if § 2254(d) were not applicable to Mr. Nuckolls' claims, he has not met the
requirements of § 2254(e)(2) and is not entitled to an evidentiary hearing.

factual issues underlying the petitioner's claims." *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000).

The state court record filed in this case adequately addresses the claims raised in the instant petition.

For these reasons, an evidentiary hearing is unnecessary in the instant case.

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied.

A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 24th day of March, 2020.

**/s/** Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**